Haight, J.
This action was brought for a co-partnership accounting. The defense was an account stated and settlement in full. It was admitted in the pleadings that the co-partnership was formed under a written agreement; that it continued in force from September, 1877, until about the 1st of January, 1880, when the same was discontinued by mutual consent. It is claimed on the part of the defendant that on the 15th day of December, 1879, an inventory was taken and an account stated, which was examined by both parties and acquiesced in as correct, and that thereupon the co-partnership was terminated, and they entered into other and different arrangements. The referee found as a fact that there was an account stated and settlement on or about the 15th day of December, 1879, as claimed by the defendant and as a conclusion of law that the complaint should be dismissed. To these findings the plaintiff excepts, and the question thus presented becomes the important one to determine on this appeal. The contract by which the parties became co-partners was to carry on the business of , manufacturing boots.
The defendant testified in substance that on December 15, 1879, an inventory was taken by Murphy, the husband *183 of the plaintiff, at the factory; that the prices were all made and carried out by him and brought to the defendant’s store; that the total, as shown by the inventory, was credited to the factory and the total production of the factory was given credit for at that time, and the factory was charged with everything that had been paid out and a balance was struck. This showed a deficiency of $1,054.39; that the factory had sustained a loss during the year of that amount. He further testified that this inventory was a great surprise to the parties; that they had been anticipating a profit; that the figures were afi gone over again; that they went over to the factory to see if any errors had been made in the account and that the matter was all talked over in a general way; that Mr. Murphy was shown the figures and he said he could not account for it; that regret was expressed on both sides; that Murphy said he had no money to pay any losses, and the defendant told him that he would let it rest for the present and see what the future would bring forth; that they then made an agreement for the future. He further testified that never thereafter did the plaintiff or anyone on her behalf make any objections to the correctness of the account as stated.
Henry B. G-orden, the defendant’s bookkeeper, testified that he participated with Mr. Murphy in making up the account in December, 1879; that the account showed a loss; that he delivered Mr. Murphy a statement of each of the accounts at the end of the settlement; that at the time of the account of December 15,1879, Murphy brought to the office an inventory of the effects of the factory; that he took the inventory and added to it all that the factory had produced in that year, as shown by the books, in account with the factory, and from that account deducted the disbursements of the factory for that year, which result showed a loss of ten hundred and odd dollars; that he handed the result to the defendant and Mr. Murphy; that Murphy not being satisfied with the result took his inventory back and went over it again thoroughly and could make it no different. That the defendant to make sure that everything was correct went through the books personally himself and .examined every item in the year’s settlement and could make the result no different, he or Mr. Murphy. That they met again in the office in the presence of the witnesses about a week afterwards and figured it all over, and went over a recapitulation of the thing ecarfully together and could make the thing no different. That the conversation about the loss which Mr. Murphy and the defendant had in his presence was that they could not see where there should be a loss. Mr. Murphy said he was disappointed in it; that defendant told the witness to close the account and charge *184 the account to profit and loss, as he could make it no different. That was in Murphy’s presence. Murphy said he was disappointed in it, and Mr. Eoss sympathized with him and said he was sorry there was a loss and not a profit. That neither Murphy nor anybody else made any further objection to the correctness of the balance.
John Murphy, sworn on behalf of the plaintiff, testified that he was the husband of the plaintiff; that an inventory was taken December 15, 1879; that himself and his son and the defendant took the inventory; that they entered it on the book, and the defendant came over and checked off each article; that the inventory was taken in the factory, and after it was completed the defendant took it to the store; that the witness went over to the store a few days afterwards and the defendant said that the factory had sustained a loss of between $600 and $700; that the witness said he was. not surprised; that the defendant asked him where he suspected the loss was, and witness told him that when he cut the goods down from three to nine dollars a case the factory would show a loss; he was dissatisfied and walked into the packing-room and says: “Murphy, if-the . factory sustains a loss I will stand the loss;” that there had been no steps taken to settle until now. Defendant told him in the presence of witness’ son that he would cancel the claim; that the defendant saw the witness again and asked what he proposed to do in the matter, and the witness told defendant that he would not work another hour in that way; that he was satisfied things were not right; that defendant then made the proposition to hire him by the year.
On his cross-examination Murphy testified that at the time of the last inventory taken in December, 1879, the result showed a loss', and after the result was arrived at the defendant and himself went to the factory and went over the figures again to make certain that it was correct; that they went over the figures to see if they could find any mistake in the figures of the inventory, and could not find any.
Other evidence was given upon the subject, but none that materially changes that to which we have alluded. The rule is that in stating an account there must be a mutual examination of the claims of each other by the parties, and a mutual agreement between them as to the correctness of the allowance and disallowance of their respective claims, and of the balance as it is struck upon the final adjustment of the account. .That their minds must meet as in making other agreements, and they must both assent to the account and the balance as correct; but that this agreement and assent need not be direct and express, but may be implied *185 from circumstances. For instance, if one party presents his account to the other and the latter makes no objection, it may well be inferred that he is satisfied with and assents to it as correct; or, if an account be made up and transmitted by one party to another by mail, and the latter keeps it for a considerable time without making any objection, he may be deemed to have acquiesced in it. An account stated can only be opened where the party objecting shows clearly that he has been misled by fraud, mistake or manifest error. Lockwood v. Thorne, 11 N. Y., 170; S. C., 18 id., 285, 288; Stenton v. Jerome, 54 id., 480, 484; Quincey v. White, 63 id., 370, 377; Young v. Hill, 67 id., 162, 172; Harley v. 11th Ward National Bank, 76 id., 618; Volkening v. De Graaf, 81 id., 268; Sharkey v. Mansfield, 90 id., 227; Sampson v. Freedman, 102 id., 699, 701, 2 N. Y. State Rep. 434.
When we come to apply the rule as established by these authorities, we find that it is substantially undisputed that on the 15th of December, 1879, an inventory was taken, the account was figured up and a statement was made by the bookkeeper and given to Mr. Murphy and the defendant. That they were both surprised and disappointed at the result and they themselves again went over the inventory, stock and the accounts for the 'year to see if any mistake could be discovered. That Murphy declared that the loss was the result of cutting the prices upon the stock and this was” doubtless the fact, That thereafter the co-partnership business terminated by the mutual consent of the parties, and other arrangements were made by which Murphy was employed by the defendant. It further appears that no further question was raised in reference to the correctness of the account until the commencement of this action which was on the 31st day of December, 1884, five years after the account had been stated. It consequently appears that there was an acquiescence in the account for that length of time and the inference is such as to justify the findings and conclusions of the referee.
Again, it is contended that John Murphy was not the authorized agent of the plaintiff and that she was not bound by the settlement made by him. It appears however that she personally had nothing to do with the conduct of the business; that the talk in reference to forming the co-partnership was conducted by her husband and the agreement itself provides that “ The said Ross is to furnish the capital to such an amount as he may see fit and to buy all the stock, tools and fixtures to the best advantage, with the assistance of John Murphy, the husband of said Margaret Murphy, who is to represent said Margaret Murphy *186 as her agent, and to devote all his time and attention to said manufacturing and shall manufacture and deliver to said Ross hoots at the following prices.”
And again, the contract provides “the said Margaret Murphy by her husband is to draw at the rate of ” etc. The articles of co-partnership were signed by her and it appears to us that the provisions referred to are sufficiently broad to constitute Murphy her husband, her general agent in the matter.
None of the exceptions to the admission of evidence appear to be well taken. The judgment should be affimed, with costs.
Smith, P. J., Barker and Bradley, JJ., concur.